**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

CASE NO.: 6:17-cv-344-ORL-40TBS

BRETT NYQUIST,

*Plaintiff,*

vs.

THE GROUP HEALTH BENEFIT PLAN FOR ASSOCIATES OF PUBLIX SUPERMARKETS, INC., PUBLIX SUPER MARKETS, INC., BLUE CROSS AND BLUE SHIELD OF FLORIDA, INC., and BLUE CROSS AND BLUE SHIELD OF SOUTH CAROLINA, INC.,

*Defendants.*
________________________________/

FILED
2017 MAR -1 PM 12:02
US DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO, FLORIDA

## COMPLAINT

Plaintiff, Brett Nyquist ("Nyquist"), sues Defendants, The Group Health Benefit Plan for Associates of Publix Super Markets, Inc. ("Publix Plan"), Publix Super Markets, Inc. ("Publix"), Blue Cross and Blue Shield of Florida, Inc. ("Florida Blue"), and Blue Cross and Blue Shield of South Carolina, Inc. ("BCBSSC"), as follows:

## NATURE OF THE ACTION, PARTIES, JURISDICTION, AND VENUE

1. This is an action arising under the laws of the United States, specifically the Employment Retirement Income Security Act of 1974, Title 29, United States Code, Sections 1000-1461 ("ERISA"), for Defendants' wrongful denial of Nyquist's health insurance benefits.

2. Nyquist was at all material times a citizen and resident of Cocoa, Florida, and is in all respects *sui juris*.

3. Upon information and belief, Florida Blue was at all material times an insurance company with its principal place of business / headquarters in the State of Florida and engaged in the business of selling and / or administering health insurance and / or deciding health insurance claims.

4. Upon information and belief, BCBSSC was at all material times an insurance company with its principal place of business / headquarters in the State of South Carolina and engaged in the business of selling and / or administering health insurance and / or deciding health insurance claims.

5. Upon information and belief, Publix was at all material times a corporation with its principal place of business / headquarters in Lakeland, Florida and primarily engaged in the grocery business. Given the Publix Plan emanates from Publix, the Publix Plan is presumably also situated in Lakeland, Florida.

6. This Court possesses original jurisdiction pursuant to Title 29, United States Code, Section 1132(e), and Title 28, United States Code, Section 1331.

7. Venue is proper in the Middle District Court of Florida pursuant to Title 29, United States Code, Section 1132(e) and Title 28, United States Code, Section 1391(b), since, for example, one of the Defendants (Florida Blue) has its principal place of business / headquarters in Jacksonville, Florida, another of the Defendants (Publix) has its principal place of business / headquarters in Lakeland, Florida, facts and circumstances (*e.g.*, claim denial) giving rise to this cause of action transpired (in whole or in part) in Cocoa, Florida,

Nyquist resides in Cocoa, Florida, and the Publix branch that Nyquist worked at (through which such employment he maintained the subject health insurance) was in Viera, Florida.

8. All conditions precedent to the institution of this action (*e.g.*, administrative pre-suit appeals) have occurred, been performed, been waived, or were futile.

## COMMON ALLEGATIONS

9. At all material times, Nyquist was covered by the health insurance plan sponsored / self-funded by his employer, Publix. This plan was called the Group Health Plan for Associates of Publix Super Markets, Inc. ("Publix Plan") and bared Plan / Policy No. PXN123678326664 (the "Plan"). A copy of the Plan document is attached hereto as **Exhibit A.**

10. As for Plan and claim administration, the extent of each Defendant's involvement is not entirely clear at this juncture, but each Defendant was involved with same in whole or in part.

11. At all material times, Nyquist has battled brain cancer and other conditions (*e.g.*, seizures) related to same.

12. Per his world renowned medical provider, the Mayo Clinic, Nyquist's particular condition cried out for proton beam therapy / radiation rather than photon beam therapy / radiation. The reasons for this were many, but included the following for example: (a) proton beam therapy (compared to photon beam therapy) had a greater probability of saving Nyquist's life given the particulars of his condition (like the location of the tumor, molecular composition of the tumor, and *etc.*); (b) proton beam therapy (compared to photon beam therapy) lessened the probability of Nyquist's suffering serious side-effects (*e.g.*, with photon beam therapy there is an increased probability of paralysis

and / or cognitive dysfunction, an increased probability of second malignancy, and / or an increased probability of cataract formation); and (c) Nyquist stood to have a longer life-expectancy by undergoing proton beam therapy (compared to photon beam therapy) because the dosage of radiation to Nyquist's brain required by proton beam therapy was over 33% less than photon beam therapy.

13. So as to increase his chances of remaining alive (and not frying his relatively young brain in the process, for example) Nyquist opted to pursue the treatment plan prescribed by the Mayo Clinic; *i.e.*, to receive proton (not photon) beam therapy.

14. Mayo Clinic did not pass on any added cost of proton beam therapy (as compared to photon beam therapy) to Defendants, so Defendants cannot be legitimately heard to complain that they had some sort of contractual or legal right or obligation to force Nyquist into inferior, riskier medical treatment so as to save the Plan money. Defendants have conceded that photon beam therapy would have been covered under the Plan.

15. Through correspondence spanning several months in 2015, Nyquist attempted to receive Defendants' precertification of the needed proton beam therapy, Defendants refused to precertify same, Nyquist carried out pre-service appeals with Defendants to no avail, and Nyquist ultimately opted to pay approximately $200,000.00 out-of-pocket for the proton beam therapy in accordance with the sound medical counseling and prescription of the Mayo Clinic (rather than non-existent medical counseling of paper pushing medical personnel salaried or hired by Defendants who had never even examined Nyquist in-person). Such proton beam therapy was carried out in the Fall of 2015 at the Mayo Clinic in Rochester, Minnesota.

16. Throughout Nyquist's proton beam therapy in Rochester, Minnesota, Defendants, in quite inconsistent fashion, afforded coverage on the one hand (*e.g.*, MRIs and X-rays performed as part of the proton beam therapy) and refused coverage on the other hand (*e.g.*, the proton beam radiation itself). Defendants are legally precluded from this kind of whimsical, "have your cake and eat it too" coverage decision-making.

17. By cover letter dated May 5, 2016, and multiple enclosed exhibits, the Merlin Law Group commenced the first post-service appeal on Nyquist's behalf.[1] By letter dated June 21, 2016, received by Nyquist (*via* the Merlin Law Group) on June 27, 2016, Florida Blue clung to Defendants' aberrant coverage defenses (namely an "investigational" / "experimental" theory), upholding claim denial on the first post-service appeal. By cover letter dated September 26, 2016, and multiple enclosed exhibits, the Merlin Law Group commenced the second post-service appeal on Nyquist's behalf.[2] By letter dated November 29, 2016, received by Nyquist (*via* the Merlin Law Group) on December 1, 2016, Publix clung to Defendants' aberrant coverage defenses (namely an "investigational" / "experimental" theory), upholding claim denial on the second post-service appeal.

[1] For HIPAA / privacy reasons, the entire first post-service appeal package is fully incorporated herein by reference rather than attached hereto as an exhibit. The entire first post-service appeal package is presently possessed by or readily available to all Defendants, and the entire first post-service appeal package will be provided to the Court and / or put to use in this litigation under seal or a protected health information ("PHI") confidentiality agreement.

[2] For HIPAA / privacy reasons, the entire second post-service appeal package is fully incorporated herein by reference rather than attached hereto as an exhibit. The entire second post-service appeal package is presently possessed by or readily available to all Defendants, and the entire second post-service appeal package will be provided to the Court and / or put to use in this litigation under seal or a protected health information ("PHI") confidentiality agreement.

18. For all the reasons set forth in the thorough post-service appeal packages fully incorporated herein by reference, and likely more reasons not yet discovered, Defendants' claim denial does not pass legal and / or factual muster even under the most friendly of Defendant standards of review that might someday apply in this litigation; *i.e.*, Defendants' claim denial is the epitome of "arbitrary and capricious."[3]

19. For example, and in sum, Defendants' "investigational" / "experimental" basis for claim denial is woefully antiquated; *i.e.*, out of touch with modern medicine.

20. As another example, and in sum, the practice of medicine is not a "one size fits all" endeavor where the fate of a human being (here, Nyquist) can always be dictated by the pieces of paper (Defendant "guidelines") upon which antiquated "investigational" / "experimental" nonsense is memorialized.

21. Here, simply put and in sum, one of the world's very best medical providers (the Mayo Clinic) carefully and thoughtfully assessed the particulars of Nyquist's brain cancer and made an educated, informed decision as to how to best go about saving his life in a manner less likely to result in debilitating or life-ending side-effects ... proton (not photon) beam therapy. And, here, quite simply, the same plainly cannot be said for Defendants (and / or their salaried or hired medical personnel) who never examined Nyquist in-person (as just one example of Defendants' claim handling and decision-making blunders) and robotically applied antiquated written "guidelines" as if Nyquist was a mere sub-number of a Plan number rather than a living, breathing, real life person deserving of individualized (rather than cookie-cutter) care.

---

[3] Given Publix both decides claims (*e.g.*, Publix's November 29, 2016, letter) and pays claims (*see* the Plan, Ex. A at 57), it would seem this is a conflict case subject to a heightened standard of review.

22. And as pointed out by the medical literature enclosed with the post-service appeal packages fully incorporated herein by reference (and also the literature cited by the Mayo Clinic to Defendants well before that, and likely more literature), the Mayo Clinic was / is not alone in recognizing the propriety of proton beam (rather than photon beam) therapy / radiation, especially in situations like Nyquist's where a tumor is surrounded by an incredibly vital organ (the brain) that simply cannot be compromised during radiation.

23. When the Plan is appropriately applied to modern medicine and the particulars of Nyquist and his condition, Nyquist's proton beam therapy plainly triggered the Plan's coverage grants and Defendants erred in deciding otherwise.

24. At all material times, premium was paid in relation to the Plan, which such Plan was an employee welfare benefit plan within the meaning of 29 U.S.C. § 1002(1).

25. At all material times, the Plan was in full force and effect and was a legally valid and binding contract.

26. Nyquist has suffered significant financial harm (approximately $200,000.00), not to mention emotional distress, as a result of Defendants' botched claim handling and decision-making.

27. Nyquist exhausted the appeal process in an effort to accomplish Defendants' doing the right thing (*i.e.*, indemnifying him) sans litigation, to no avail. Hence, this lawsuit as Nyquist's last resort.

**COUNT I – RECOVERY OF BENEFITS UNDER ERISA,**
**29 U.S.C. § 1132(A)(1)(B)**

28. Nyquist re-alleges Paragraphs 1 through 27 as if fully set forth herein.

29. This is a claim to recover benefits and enforce rights under 29 U.S.C. § 1132(a)(1)(B).

30. Pursuant to 29 U.S.C. § 1132(a)(1)(B), Nyquist, as a participant in the Plan, is entitled to sue for judicial determination and enforcement of benefits.

31. Defendants improperly denied Nyquist's claims for health insurance benefits owed to him under the Plan, in contravention of the Plan and ERISA.

32. Nyquist has no other adequate remedy at law to address the injuries he has suffered as a result of Defendants' denial of benefits.

33. As a further result of Defendants' refusal to provide benefits, Nyquist has been forced to retain legal counsel to represent him in this matter and is accordingly entitled to recover his reasonable attorney's fees and costs pursuant to 29 U.S.C. § 1132(g)(1).

WHEREFORE, Plaintiff, Brett Nyquist, requests the entry of judgment against Defendants, The Group Health Benefit Plan for Associates of Publix Super Markets, Inc., Publix Super Markets, Inc., Blue Cross and Blue Shield of Florida, Inc., and Blue Cross and Blue Shield of South Carolina, Inc., for liability and for damages including, but not limited to, past-due contractual benefits, attorneys' fees pursuant to 29 U.S.C. § 1132(g)(1), costs incurred bringing this action, and for such other relief as this Court deems equitable, just and proper.[4]

Dated this 28th day of February, 2017.

---

[4] As for the liability aspect of this litigation, all Defendants are implicated. As for the damages aspect of this litigation, the Plan provides, in pertinent part, as follows: "Any money judgment against the [Publix Plan] shall be enforceable only against the [Publix Plan] and shall not be enforceable against any other person or entity ... unless such liability can be established against them in their individual capacity as specified under ERISA." Plan, Ex. A at 60. So, only time will tell as to which Defendant(s) will need to tender the long-overdue health insurance benefits.

Respectfully submitted,

**MERLIN LAW GROUP, P.A.**
222 Lakeview Ave., Suite 950
West Palm Beach, Florida 33401
(561) 855-2120
(561) 249-1283 *facsimile*

/s/ Jeffrey L. Greyber
**Jeffrey L. Greyber, Esq.**
Fla. Bar No. 41103
jgreyber@merlinlawgroup.com
hcasebolt@merlinlawgroup.com
*Attorney for Plaintiff*